IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWSHAWNA RICH et vir., <br> KEITH RICH <br><br> Plaintiffs, <br><br> v. <br><br> WESTCOTT COMMUNICATIONS, INC., <br> CARL WESTCOTT, MICHAEL STACY, <br> ROBERT JOHNSTON, and <br> JAMES ELDERS, III, <br><br> Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:96-CV-2141-P |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are the following:

1. Defendants Westcott Communications, Inc., Carl Westcott, Michael Stacy, and Robert Johnston's Motion for Partial Summary Judgment and Brief in Support, filed on September 19, 1997;

2. Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment and Brief in Support, filed on October 21, 1997;

3. Defendants' Reply Brief to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment, filed on November 7, 1997;

4. Defendants' Motion for Leave to File Supplemental Motion and Brief in Support of Summary Judgment, filed on November 7, 1997;

5. Plaintiffs' Response to Defendants' Supplemental Motion for Summary Judgment, filed on November 21, 1997;

6. Defendants' Reply to Plaintiffs' Response to Supplemental Motion for Summary Judgment, filed on November 25, 1997; and

7. Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment, filed on November 26, 1997.

For the reasons set forth below, the Court is of the opinion that Defendants' motion for leave



should be GRANTED and Defendants' motion for summary judgment should be GRANTED in its entirety. As discussed below, all of the federal issues in this lawsuit have been resolved by this Order. The Court therefore REMANDS Plaintiffs' remaining state law claims to state court.

## BACKGROUND

This is an employment case. Plaintiff LaShawna Rich ("Plaintiff" or "Rich")[1] has sued Defendants Westcott Communications, Inc. ("Westcott Communications"), Carl Westcott ("Westcott"), Michael Stacy ("Stacy"), Robert Johnston ("Johnston"), and James Elders, III ("Elders") for occurrences that took place during her employment at Westcott Communications.[2] Specifically, Plaintiff alleges that Westcott Communications violated Title VII of the Civil Rights Act

---

[1] Rich's husband, Keith Rich, is also a named plaintiff in this lawsuit. He has asserted a claim for loss of consortium under state law. With the exception of the loss of consortium claims, the analysis in this Order almost entirely discusses LaShawna Rich's claims against the various Defendants. Thus, any reference to "Plaintiff" in this Order is only meant to include LaShawna Rich. When the discussion is intended to encompass both Plaintiffs, the Court will refer to the parties collectively as "Plaintiffs."

[2] In her Response to Defendants' Motion for Summary Judgment, Plaintiffs concede that they do not have a cause of action against Westcott, Stacy, and Johnston individually. (Plaintiffs' Response, at 2). In the Complaint, Plaintiffs asserted claims against these individuals for violations of Title VII, retaliation, and intentional infliction of emotional distress. Based on the concession in Plaintiffs' Response, the claims against these three individuals are DISMISSED WITH PREJUDICE.

Further, although the Complaint is not entirely clear, it appears that Plaintiffs have also asserted a cause of action against Elders individually for a violation of Title VII, in addition to the claims against him for assault, intentional infliction of emotional distress, and loss of consortium. In Plaintiffs' Response, however, only Westcott, Stacy, and Johnston are released from individual liability. To the extent that the Complaint alleges a Title VII violation against Elders individually, this particular claim is also DISMISSED WITH PREJUDICE, since it has been clearly established that there cannot be individual liability under Title VII. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.), *cert. denied*, 513 U.S. 1015 (1994). The parties should note, however, that the Court's decision to dismiss the Title VII claim against Elders does not in any way affect Plaintiffs' other claims against Elders.

**MEMORANDUM OPINION AND ORDER-2**
**96-2141**

of 1964 ("Title VII") because it knew or should have known that one of its employees, Elders, had engaged in sexual harassing behavior, but the company did not take appropriate action to remedy this conduct. Further, Plaintiff alleges that Westcott Communications discharged her in retaliation for her reporting an alleged sexual assault committed by Elders against Plaintiff. Finally, Plaintiffs assert state law claims for intentional infliction of emotional distress and loss of consortium against Westcott Communications.[3]

Westcott Communications, a company which provides satellite and video cassette training courses for various employers, hired Plaintiff as an administrative assistant in 1994. Initially, Plaintiff worked in the Law Enforcement Television Network but she eventually transferred to the Industrial Training Systems Department ("ITS").[4] Upon her transfer to ITS, Plaintiff assumed the position of Administrative Assistant's Assistant and her direct supervisor was Janet Williams ("Williams"), who was the Administrative Assistant. Williams' supervisor was Mitchel Cohen ("Cohen"). When Williams left Westcott Communications, Plaintiff became the Administrative Assistant. While she was the Administrative Assistant in ITS, Plaintiff's supervisor was Stacy.

Plaintiff's problems at Westcott Communications can be separated into two categories, which correspond to the two positions she held after transferring to ITS. Her first allegations of wrongful

---

[3] Plaintiffs also have claims against Defendant Elders, but there is no motion for summary judgment by either party for the claims against Elders. Consequently, with the exception of the claim under Title VII against Elders individually, Plaintiffs' remaining causes of action which seek to hold Elders liable for his conduct are neither affected by nor discussed in this Order.

[4] Both Plaintiff and Defendant have failed to give even a cursory discussion of Plaintiff's employment background and her various supervisors. Thus, the Court is left to search the record and, using deposition excerpts and affidavits, piece together this background information as accurately as possible.

MEMORANDUM OPINION AND ORDER-3
96-2141

behavior began while she was the Administrative Assistant's Assistant. Most of her complaints resulted from the actions of Elders, who was employed in ITS as a Regional Sales Manager.[5] According to Plaintiff, Elders would "bump into" her when he delivered his paperwork to Plaintiff and he would make vulgar statements and sexual innuendoes when telling jokes. (Plaintiff Dep., at 42-48). Plaintiff complained of this behavior to Williams.[6]

Plaintiff's second category of complaints against Elders arose after she became the Administrative Assistant in ITS. Initially, Plaintiff asserts that the physical contact and the vulgarity continued from Elders. (Plaintiff Dep. at 64). Plaintiff also alleges that Elders tried to kiss her outside the elevator area in the offices of Westcott Communications. (Plaintiff Dep., at 57-58). Next, on February 15, 1996 (approximately one week after the attempted kiss), Plaintiff and Elders left work in Elders' car and met Plaintiff's mother at a local restaurant for lunch. After their meal, Plaintiff and Elders drove back to Westcott Communications. Upon arriving at the garage and parking his car, an incident occurred. Plaintiff asserts that Elders sexually assaulted her in the parking lot and it is this incident that lies at the center of this case.

Shortly after the incident in the parking lot, Plaintiff attended a scheduled doctor's appointment and then reported that she had been raped to the Dallas Police Department. At some

---

[5] Plaintiff has characterized Elders as a "co-worker" (Plaintiffs' Response, at 3) and admits that Elders was not her supervisor, did not have any authority over her, and could not terminate her employment. (Plaintiff Dep., at 64).

[6] It is disputed as to whether either Williams or Plaintiff reported these complaints to Stacy. Both Plaintiff and Williams assert that they informed Stacy of Plaintiff's complaints. (Plaintiff Dep., at 49-50; Williams Dep., at 54-56). On the other hand, Stacy's affidavit expressly states that neither Plaintiff nor anyone on her behalf complained to him about sexual harassment. (Stacy Aff., ¶ 3). Because the Court resolves all factual disputes in favor of the non-movant when ruling on a motion for summary judgment, the Court assumes that Plaintiff or Williams reported this conduct.

point after contacting the police, Plaintiff called Marc Portugal ("Portugal"), who was her acting supervisor because Stacy was out of town, and reported that she had been sexually assaulted by a co-worker. Portugal contacted Robert Johnston ("Johnston"), Vice President of Law and Human Resources for Westcott Communications, and relayed the information about the assault. On February 19, 1996, Johnston began an investigation into Plaintiff's charges and over the next several days, he interviewed employees at Westcott Communications, including Plaintiff. As the investigation continued, Plaintiff recounted the sexual assault on at least three separate occasions and Johnston noted some inconsistencies when Plaintiff retold her story. Johnston informed Plaintiff that he could not reconcile her various descriptions with the other evidence and interviews that he had obtained during the investigation. When Plaintiff refused to reconcile her story, Johnston terminated her employment pursuant to the Employment Handbook of Westcott Communications, which lists "giving false statements" as a ground for immediate termination.

On June 28, 1996, Plaintiffs filed the current lawsuit, alleging sexual harassment, retaliatory discharge, intentional infliction of emotion distress, loss of consortium, and assault. Defendants removed the case on July 30, 1996. In its current motion, Westcott Communications asserts that there are no triable issues of fact with respect to all of Plaintiffs' causes of action against Westcott Communications on the ground that Plaintiffs have failed to present evidence that would create a genuine dispute of material fact with respect to the essential elements of her claims.

## DISCUSSION

### I. DEFENDANTS' MOTION FOR LEAVE

As an initial matter, the Court must consider Defendants' Motion for Leave to File a Supplemental Motion for Summary Judgment, filed on November 7, 1997. Defendants petitioned

the Court for leave to file this additional summary judgment motion and argue that Plaintiffs' loss of consortium claims fail as a matter of law. Plaintiffs filed a timely response to Defendants' motion on November 21, 1997, and this response went to the merits of Defendants' motion; it did not challenge the granting of leave to file this motion. In an effort to resolve all of Plaintiffs' claims against Westcott Communications and because Plaintiffs' response does not oppose Defendants' request for leave to file its motion, the Court is of the opinion that Defendants' motion for leave should be GRANTED.[7]

## II.  PLAINTIFFS' OBJECTION TO THE AFFIDAVIT OF CATHERINE PFAFF

In their response to Defendants' motion for summary judgment, Plaintiffs object to the affidavit of Catherine Pfaff ("Pfaff"), which Defendants have submitted as evidence in support of their summary judgment motion. Because the Court has found it unnecessary to rely upon this challenged testimony, it need not consider the merits of Plaintiffs' objection. Plaintiffs' objection to Pfaff's affidavit is therefore DENIED as moot.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must identify

---

[7] Plaintiffs' loss of consortium claim against Westcott Communications is discussed below in Section III.D.

MEMORANDUM OPINION AND ORDER-6
96-2141

the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to demonstrate the existence of the required elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in its favor. *Anderson*, 477 U.S. at 256-57. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgement are likewise insufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir. 1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. Finally, in reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the submitted documents to which the nonmoving party directs its attention. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

**MEMORANDUM OPINION AND ORDER-7**
**96-2141**

A.  **Sexual Harassment Claim**

Plaintiff claims that Westcott Communications violated Title VII because it created a hostile work environment. To support a sexual harassment claim based on a theory of hostile work environment, Plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987)). To give rise to a cause of action, the questioned conduct must create a work environment that a reasonable person would find hostile or abusive. *Id; see also DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.), *cert. denied*, 116 S.Ct. 473 (1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). In determining whether a hostile or abusive environment exists, the courts consider the totality of the circumstances. *Harris*, 510 U.S. at 23; *Farpella-Crosby*, 97 F.3d at 806. The factors used to determine whether an environment is hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Court now turns to an analysis of the facts in this case to see if there is a material dispute of fact on Plaintiff's sexual harassment claim.

When questioned during her deposition about the instances of harassing conduct by Elders, Plaintiff testified:

> Q:  All right. Okay. So now as you sit here today, you're able to recall five specific bumps and that's all, right?

**MEMORANDUM OPINION AND ORDER-8**
**96-2141**

> A:   Yes.
>
> Q:   Okay. That would be for the whole time he (Elders) was there — for the whole time he was there and before the rape, right?
>
> A:   Yes, sir.
>
> Q:   Okay. Now, specifically the discussions, the vulgar discussions about marriage, I think we already talked about that. I think you said it happened five times or less?
>
> A:   Yes.
>
> Q:   During the whole time, again, from the time he got there until the rape, right?
>
> A:   Yes, sir.

(Plaintiff Dep., at 183-84). In describing the instances of sexually harassing conduct, Plaintiff asserts that Elders would "bump into" her with his rear end when Elders was "delivering paperwork or walking by dropping off work to be done, cleaning out his file." (Plaintiff Dep., at 43). As far as the vulgar conversations, Plaintiff testified:

> Q:   And what was he (Elders) saying?
>
> A:   He was just talking about his marriage, his once — the jokes that occurred.
>
> Q:   His what?
>
> A:   His — the jokes that occurred that were going around that had a lot of profanity and a lot of, I believe, misconduct in them.
>
> . . . .
>
> Q:   Okay. Tell me exactly what he said about the marriage.
>
> A:   Just basically that he was going to get married and talked a lot about their sexual life.

(Plaintiff Dep., at 45-46).

Plaintiff asserts that she reported these instances to Williams, who was her supervisor when Plaintiff was the Administrative Assistant's Assistant. (Plaintiff Dep., at 34). When Williams left the

**MEMORANDUM OPINION AND ORDER-9**
**96-2141**

company and Plaintiff became the Administrative Assistant, she took her complaints to Stacy, who was her direct supervisor after she assumed her new job duties. (Plaintiff Dep., at 35, 64).[8] Plaintiff also asserts that Elders attempted to kiss her, but Plaintiff was unable to inform Stacy of this conduct because when she went to complain, Stacy was on the telephone. (Plaintiff Dep., at 69-70).

Despite the harassing conduct and her complaints to management, Plaintiff continued to associate with Elders. She testified that she "was trying to let James (Elders) be a friend. (She) was trying to have the same relationship." (Plaintiff Dep., at 60). Plaintiff continued to go to lunch with Elders after she complained of his conduct[9] and she asked Elders to pick up her husband's anniversary present and store it in his car.[10]

---

[8] In his affidavit, Stacy disputes that Plaintiff or anyone on behalf of Plaintiff ever brought this conduct to his attention. (Stacy Aff., ¶ 3). Under well-established law on the issue of hostile work environment, Westcott Communications could avoid liability if it knew or should have know of the harassing behavior but took prompt remedial action. *See Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794-95 (5th Cir. 1994); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987). Since the company claims Plaintiff never informed it of the harassing behavior, however, Westcott Communications has not argued that its prompt remedial action is a defense to liability. Further, because Plaintiff is the nonmoving party, the Court assumes for purposes of Defendants' motion for summary judgment that someone informed Stacy of Elders' conduct.

[9]  Q: So after James had been rubbing against you, and after James had been saying vulgar things, and after you made complaints to the company, you still went to lunch alone with James; isn't that true?

   A: Yes, sir.

(Plaintiff Dep., at 61-62)

[10]  Q: So after you allege that James had been sexually harassing you, you asked him to go pick up a present for you husband's anniversary and store it in your car - -

   A: Yes.

   Q: — in his car, I'm sorry ?

**MEMORANDUM OPINION AND ORDER-10**
**96-2141**

Given the summary judgment evidence on file, the Court finds that, based on a totality of the circumstances, the environment at Westcott Communications was not objectively hostile. In her deposition and as noted above, Plaintiff testified that she could remember, at most, five times when Elders bumped into her and five times when he told stories using vulgarity and/or sexual overtones.[11] Further, after complaining to management of this behavior, Plaintiff still associated with Elders, going to lunch alone with him, and asking him to pick up and store a present for her.[12] In addition, the conduct of Elders did not unreasonably interfere with Plaintiff's work performance; in fact, it did not affect her performance at all.[13] Given all of the circumstances and viewing the evidence in a light

---

      A:   Yes, sir.

      Q:   And he did that for you?

      A:   Yes, sir.

(Plaintiff Dep., at 81).

[11] Plaintiff's testimony about these jokes is extremely vague and does not provide the Court with the content or context of these jokes.

[12] Based on this evidence, it is difficult to find that Plaintiff "subjectively perceive(d) the environment to be abusive," which is required for an actionable sexual harassment claim. *Harris*, 510 U.S. 21-22.

[13] Q:   Okay. And there was never a time when you were unable to perform your job because of James' being around you, was there?

      A:   No, sir.

      Q:   So you were always able to do your job, you were just annoyed by - -

      A:   Yes, sir.

(Plaintiff Dep., at 86-87).

**MEMORANDUM OPINION AND ORDER-11**
**96-2141**

most favorable to the non-movant, Plaintiff does not have an actionable claim for hostile work environment sexual harassment against Westcott Communications as a matter of law.

To the extent that Plaintiff's Complaint asserts that the sexual assault by Elders on February 15, 1996 created a hostile work environment at Westcott Communications, this claim fails as well. An assault sufficiently alters the conditions of a victim's employment and creates an abusive work environment for purposes of Title VII liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir. 1995). This does not end the inquiry, however, because Title VII is not a strict liability statute. *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir. 1993). If Plaintiff contends that the assault caused the hostile environment, she must show that Defendant knew or should have known of its existence and that Defendant failed to take prompt remedial action. *Carmon*, 17 F.3d at 794-95 (5th Cir. 1994); *Jones*, 793 F.2d at 719-20 (5th Cir. 1986). "What is appropriate remedial action will necessarily depend on the particular facts of the case--the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994) (quoting *Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989)). In all cases, however, to be appropriate, the employer's response must have been reasonably calculated to halt the harassment. *Waltman*, 875 F.2d at 477.

As an initial matter, the Court notes that the alleged assault did not occur during business hours (it was immediately after Plaintiff and Elders had eaten lunch) and did not occur on the premises of Westcott Communications (it occurred in the parking garage of the office building). Further, Elders was not Plaintiff's supervisor; he was her co-worker. (Plaintiff Dep. at 64). It is undisputed that Plaintiff contacted her acting supervisor at Westcott Communications and reported that she had been sexually assaulted by Elders. (Johnston Aff., ¶ 1). Westcott Communications

immediately began investigating Plaintiff's allegations and placed both Plaintiff and Elders on paid administrative leave. (Johnston Aff., ¶ 4). In fact, Westcott Communications terminated Elders from his position in March 1996. (Johnston Dep., at 39). The Court finds that this response to Plaintiff's allegations was prompt and reasonably calculated to end the harassment. Thus, to the extent that Plaintiff's cause of action attempts to hold Westcott Communications liable for a hostile work environment due to the assault by Elders, the Court concludes that this claim also fails as a matter of law.

### B.     Retaliation Claim

Plaintiff claims that Westcott Communications terminated her employment in retaliation for Plaintiff's reporting of the sexual assault by Elders. To assert a cause of action for the exercise of a federally protected right, Plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action followed; and (3) there was a causal connection between the activity and the adverse action. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). An employee engages in a protected activity by opposing an unlawful and discriminatory employment practice. *Long*, 88 F.3d at 304. An employee need only have a reasonable belief that the practices she opposed were unlawful. *Id.* If Plaintiff successfully establishes her prima facie case, the burden of production shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment decision. *Long*, 88 F.3d at 304-05 (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983) (adopting the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework for retaliation claims)). If Defendant submits evidence that the employment decision was non-retaliatory, the focus shifts to the ultimate question of whether Defendant unlawfully retaliated against Plaintiff for engaging in

**MEMORANDUM OPINION AND ORDER-13**
96-2141

protected activity. *Id* at 305.

Plaintiff has failed to show that Defendant retaliated against her for reporting the sexually harassing conduct of Elders prior to the February 15, 1996 sexual assault.[14] Plaintiff was engaged in protected activity when she reported this conduct to Williams and Stacy. Further, an adverse employment action followed because Westcott Communications terminated her position on March 28, 1996. Nevertheless, Plaintiff has wholly failed to point the Court to any evidence that her complaints of harassment were causally connected to her termination.[15] Plaintiff has not shown that her complaints about the earlier conduct of Elders were in any way related to the decision by Westcott Communications to terminate her employment for giving inconsistent statements during

---

[14] Again, for purposes of summary judgment and because Plaintiff is the non-movant, the Court presumes that Plaintiff reported Elders' behavior to her supervisor. Further, Plaintiff's Response indicates that her retaliation claim is based only on her reporting the sexual assault. (Plaintiff's Response, at 5). In an effort to resolve all possible claims against Westcott Communications, however, the Court will briefly analyze any cause of action for retaliation that Plaintiff may have for reporting harassing conduct prior to February 15, 1996.

[15]  Q: And about what time during 1994 did this take place?

A: I don't recall the date.

Q: It was in 1994?

A: I don't remember that.

Q: It was prior to Janet leaving?

A: Yes, it was.

(Plaintiff Dep., at 50). Plaintiff also claims that Elders sexually harassed her when she became the Administrative Assistant when he attempted to kiss her during work. Although Plaintiff alleges that she attempted to report this conduct to her supervisor (Stacy), she admits that she was never successful in voicing her concerns. (Plaintiff Dep., at 69-70).

**MEMORANDUM OPINION AND ORDER-14**
**96-2141**

their investigation of Plaintiff's sexual assault claim. Since she cannot meet an element of her prima facie case, Plaintiff's retaliation claim fails as a matter of law.

Likewise, Plaintiff has failed to meet her prima facie case for retaliation with respect to her reporting the sexual assault to Westcott Communication. While there is a material dispute of fact as to the second and third elements of her prima facie case for retaliation, Plaintiff has failed to meet her evidentiary burden as to the first prong of her case. In short, Plaintiff has failed to show that she engaged in a protected activity when she reported the sexual assault by Elders. The sexual assault on February 15, 1996 occurred during non-working hours and involved two co-workers.[16] While the Court agrees with Plaintiff that "[r]ape has always been considered outrageous conduct that is not accepted in a civilized society" (Plaintiffs' Response, at 5), reporting a sexual assault outside of work by a co-worker is not a statutorily protected activity under Title VII.[17] Certainly Westcott Communications was concerned when it heard of Plaintiff's charges and they quickly began an investigation into the matter. Despite her employer's reaction and subsequent inquiry, however, this action was not mandated by Title VII. It is undisputed that the sexual assault occurred during the

---

[16] In her Response, Plaintiff addresses the issue of statutorily protected opposition in one sentence, with citations to three cases. None of these cases even remotely address the situation where two co-workers are involved during non-business hours, but *Henry v. Gehl Corp.*, 867 F.Supp 960 (W.D. Kan. 1994) appears to be the most similar of the three. *Henry* is easily distinguishable, however, since it was the plaintiff's supervisor in *Henry* who engaged in the harassing conduct and who fired plaintiff when she reported him.

[17] Plaintiff argues that there is a material dispute of fact as to whether Elders sexually assaulted Plaintiff. (Plaintiffs' Response, at 4). Because the Court resolves all fact disputes in favor of the non-movant, the Court assumes for purposes of Defendants' motion for summary judgment that Plaintiff was sexually assaulted. This does not change the result of Plaintiff's retaliation claim against Westcott Communications, however, because she has failed to meet an essential element of her prima facie case for retaliation as a matter of law.

**MEMORANDUM OPINION AND ORDER-15**
**96-2141**

lunch hour, at a place that was neither owned nor controlled by Westcott Communications (namely, the Galleria parking garage). Since this assault did not occur in the workplace and because it is undisputed that Elders was a co-worker of Plaintiff and not her supervisor, Plaintiff was not engaging in protected activity when she reported the assault and she cannot maintain a claim against Westcott Communications as a matter of law.

Even if Plaintiff could establish a prima facie case for retaliation by showing that she engaged in protected activity when she reported an off-hours assault by a co-worker, Defendant has articulated a non-discriminatory reason for ending Plaintiff's employment. Specifically, Defendant terminated Plaintiff's position with the company when it could not reconcile her version of what occurred with the other evidence and statements that had been obtained during the investigation. After Plaintiff refused to adjust her story, Defendant fired her according to the Employee Handbook provisions. (Johnston Aff., Ex. 6).

Under the *McDonnell Douglas* framework, the burden now shifts to Plaintiff to demonstrate that Westcott Communications unlawfully retaliated against her. Plaintiff has failed to present any evidence to demonstrate a material fact dispute on this issue of retaliation.[18] Plaintiff's scant Response Motion and Brief does not even mention this ultimate issue, ending instead with Defendant's non-discriminatory reason. (Plaintiffs' Brief in Support of Response, at 4). At best, Plaintiffs' Response asserts that the reason her story had different versions is because she was suffering from post-traumatic stress syndrome. (Plaintiffs' Response, at 4). Even if true, this does

---

[18] Although the ultimate issue of whether Defendant unlawfully retaliated is closely related to the third prong of Plaintiff's prima facie case, the standards of proof applicable to these questions are different. *See Long*, 88 F.3d at 304, n.4.

not explain how Defendant's termination of Plaintiff was in retaliation for Plaintiff reporting the alleged sexual assault.[19] Since Plaintiff has not referred the Court to any specific evidence which demonstrates a material fact dispute as to the ultimate issue of retaliation, Plaintiff's claim for retaliation fails as a matter of law.

In conclusion, Plaintiff's retaliation claim against Westcott Communications based on her termination after reporting the sexual assault fails for two reasons. First, the reporting of an off-premises, sexual assault by a co-worker during non-business hours is not protected activity under Title VII. Second, even if this were protected activity, Plaintiff has wholly failed to meet her burden on demonstrating a material dispute of fact as to the issue of retaliation. Either one of these factors is sufficient to bar Plaintiff's retaliation claim as a matter of law.

### C.  Intentional Infliction of Emotional Distress Claim

Plaintiff's Complaint asserts a common law claim for intentional infliction of emotional distress against Westcott Communications. To recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). In *Twyman*, the Texas Supreme Court adopted the Restatement's formulation of the tort of intentional infliction of emotional distress, including the definition of extreme and outrageous conduct as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

---

[19] At best, this is an admission by Plaintiff that there were, in fact, inconsistencies in the versions of the stories which she told to the investigators at Westcott Communications.

MEMORANDUM OPINION AND ORDER-17
96-2141

and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993).

It is only in "the most unusual cases" that an employer's conduct, even though it may violate Title VII, may be regarded as so extreme and outrageous that it gives rise to a claim for intentional infliction of emotional distress. *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996) (citing *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)). Thus, such a claim normally does not lie for "mere employment disputes." *MacArthur v. University of Tex. Health Ctr.*, 45 F.3d 890, 898 (5th Cir. 1995); *Johnson*, 965 F.2d at 33. Although sexual harassment usually amounts to more than a mere employment dispute, it is only when the harassment rises to the level of truly outrageous conduct that it can sustain a cause of action for intentional infliction of emotional distress against an employer under Texas law. *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 660 (Tex. App.--Corpus Christi 1994, writ denied).

Plaintiff cannot sustain a claim for intentional infliction of emotional distress against Westcott Communications. Initially, the Court notes that Plaintiff has entirely failed to brief Plaintiff's claim for intentional infliction of emotional distress or cite the Court to any relevant case law on this issue.[20] Further, and as discussed above, Plaintiff was allegedly sexually assaulted by a co-worker, outside the office, during a lunch break. Plaintiff has offered no legal explanation for how liability can be imputed to an employer for an intentional tort not committed during business hours or on the property of Westcott Communications by a co-worker with no supervisory authority. In addition,

---

[20] The entire argument made by Plaintiff on this claim is that "Westcott Communications, Inc. is responsible for such outrageous conduct and the effect it had on both the plaintiffs. There is sufficient evidence in the response to demonstrate that disputed fact issues remain." (Plaintiffs' Response, at 6).

MEMORANDUM OPINION AND ORDER-18
96-2141

the investigation by Westcott Communications and its subsequent reaction to the sexual assault was not extreme and outrageous as a matter of law. Thus, Westcott Communications is entitled to summary judgment in its favor as to Plaintiff's claim for intentional infliction of emotional distress.

### D.   Loss of Consortium Claim

Plaintiffs' Complaint also asserts a claim against Westcott Communications for loss of consortium. Defendant challenges the viability of Plaintiff's claim for loss of consortium, pointing out that because Texas law construes a claim for loss of consortium as derivative of the spouse's underlying tort claim, it is a prerequisite to recovery for loss of consortium that the defendant be liable to the spouse on the non-derivative cause of action. *Benavides v. County of Wilson*, 955 F.2d 968, 975 (5th Cir.), *cert. denied*, 506 U.S. 824 (1992). The Court agrees with Defendant on this point. Since the Court has granted summary judgment in favor of Westcott Communications on the intentional infliction of emotional distress claim, the derivative claims of both Plaintiffs for loss of consortium must also fail as a matter of law. In sum, there is no underlying tort on which Plaintiffs can base a loss of consortium claim.

## CONCLUSION

Upon thorough review of both parties' arguments, the summary judgment evidence on file, and applicable law, the Court finds that:

1. Defendant's motion for leave to file motion and brief for summary judgment is GRANTED;

2. Plaintiff's motion to strike the affidavit of Catherine Pfaff is DENIED as MOOT; and

3. Defendant's motion for summary judgment is GRANTED in its entirety.

When a properly removed action ceases to evoke a federal question, the Court may exercise

its discretion to either retain the action under its supplemental jurisdiction, or dismiss or remand the action to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352-57 (1988). Factors which the Court should consider include values of judicial economy, convenience, fairness and comity. *Id.* at 350. In the usual case in which all federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims. *Id.* at 350, n.7. Likewise, generally remand of a removed action will better accommodate the values of economy, convenience, fairness and comity than will dismissal without prejudice. *Id.* at 351-54.

After considering the record, the Court declines to exercise its supplemental jurisdiction over this now exclusively state-law action, and finds that remand, rather than dismissal, is warranted. *See Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981). Plaintiffs' state law claims against Elders are therefore REMANDED to the 160th Judicial District Court of Dallas County, Texas for disposition.

**So Ordered.**

Signed this 18th day of December, 1997.

　　　　　　　　　　　　　　　　　　　　　　／s／ Jorge A. Solis
　　　　　　　　　　　　　　　　　　　　　　JORGE A. SOLIS
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE